IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STATE AUTO MUTUAL INSURANCE
COMPANY,

          Plaintiff(s),

v.

J. ROBERT MCCUTCHEON d/b/a BOB'S
TOWING AND AUTO REPAIR, WILLIAM
ALEXANDER, and JOYCE STEINER

          Defendant(s).

08cv0350

**ELECTRONICALLY FILED**

## Memorandum Opinion

**I. Introduction.**

Before the Court in this declaratory judgment action, brought pursuant to 28 U.S.C. § 2201, is a motion for summary judgment filed on behalf of plaintiff, State Auto Mutual Insurance Company ("State Auto"). State Auto issued a contract of insurance to Robert McCutcheon ("McCutcheon") t/d/b/a Bob's Towing. On May 17, 2008, a motor vehicle accident occurred between a vehicle owned by Bob's Towing and driven by William Alexander ("Alexander"), who was an employee of Bob's Towing, resulting in injuries to defendant Joyce Steiner ("Steiner"). Steiner then filed a Complaint in the Court of Common Pleas of Butler County against McCutcheon, Bob's Towing and Alexander. This action followed.

After careful consideration of the motion for summary judgment, the responses thereto, and in opposition thereto, the Court finds that the policy language and undisputed facts establish that there is no coverage for the underlying lawsuit. Therefore, the Court will grant the motion for summary judgment filed by State Auto (doc. no. 30).

## II. Summary Judgment Standards.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.

*Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (Court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

**III.   Material Facts.**

The facts may be fairly summarized as follows.

Alexander was employed by McCutcheon at Bob's Towing, which is primarily involved in towing automobiles and occasionally performing minor repairs on vehicles. Prior to May 17, 2004, McCutcheon obtained possession of a 1997 Plymouth Voyager which had been abandoned by the owner after it was towed to Bob's Towing. At the request of McCutcheon, Alexander installed a new motor in the van in order to make it operable.

The parties dispute the date on which McCutcheon found out that Alexander did not possess a valid driver's license. While Steiner argues that the facts indicate that McCutcheon learned that information approximately three (3) weeks prior to the accident which forms the basis of this action, McCuthcheon and Alexander claim that McCuthcheon found out on or about

May 13, 2004 that Alexander did not have a valid driver's license.

McCutcheon was preparing to go away for a long weekend vacation when Alexander appeared at his residence while McCutcheon was mowing the lawn and he showed McCutcheon that he was able to get the van operating. McCutcheon advised Alexander to take the vehicle back to the garage and that he, Alexander, could check the vehicle to see if all other aspects of the vehicle were in proper operating condition. McCutcheon left for vacation on Friday, May 14, 2004 and did not return until the evening of Monday, May 17, 2004. Alexander, and Mr. Murphy (another employee of McCutcheon) had finished working and clocked out at 5:00 p.m. on May 17, 2004 and went to Ginger Hill Tavern for some drinks. After drinking at the Ginger Hill Tavern, Alexander and Murphy returned to Bob's Towing, and Alexander and Murphy decided to go and visit friends of Murphy (and April Good, who was Murphy's girlfriend).

Alexander was insistent that they take the van in which he allegedly had installed new brakes even though Murphy and Good were concerned about whether the van could be legally operated on the highway. Alexander testified that since he had done some work on the brakes of the van, he wanted to test drive the vehicle.

Alexander, Murphy and Good traveled to the residence of the Fleeger's. The distance between Bob's Towing and the Fleeger's residence is 7 miles. There is some dispute regarding whether Alexander and Murphy consumed more alcohol at the Fleeger's home. In any event, at approximately 10:00 p.m., Murphy and Alexander left the Fleeger's home in order to get money out of an ATM machine and purchase some beer. On the way to obtain money from an ATM machine (which was approximately 5-7 miles away from the Fleeger's home), Alexander was driving the van at a high rate of speed, lost control of the van, and struck the vehicle occupied by Steiner at 10:10 p.m. As a result of the accident, Steiner sustained various injuries and damages.

Steiner has filed a complaint in the Court of Common Pleas of Butler County against Alexander, McCutcheon (individually and trading and doing business as Bob's Towing). Alexander was charged with numerous offenses and was found guilty of several offenses including Aggravated Assault by Vehicle while DUI, Driving While Operating a Suspended/Revoked License, and Reckless Driving.

**Facts Regarding Permissive Use/Implied Permission**

The parties dispute whether Alexander had permission to operate the van at the time of the accident. While Alexander and McCutcheon both testified that Alexander did not have permission to operate the van as a personal vehicle, Steiner argues that Alexander had implied permission to operate the van.

According to Steiner, Alexander testified that he had previously test driven vehicles for McCutcheon several times per week and did so in the normal course of business; that McCutcheon was aware that Alexander drove vehicles after he made repairs on them; and, that McCutcheon was aware that Alexander was driving vehicles at Bob's Towing even though he did not have a license. Further, McCutcheon testified that he never told Alexander not to drive any vehicles at Bob's Towing and that he never told Alexander he could not drive the van. Nonetheless, Shaffer, who was in charge of Bob's Towing while McCutcheon was on vacation, claims that McCutcheon told Shaffer to inform Alexander not to drive the vehicle. Alexander, however, testified that he does not recall having such a conversation with Shaffer. Alexander also testified that he knew very well that he was not allowed to use the van as a personal vehicle even though he had performed some repairs on the van.

**The "Garage Keepers" Insurance Policy Issued by State Auto**

The starting point of this or any insurance coverage dispute is, of course, the insurance policy. McCutcheon was issued a "garage keeper's" insurance policy ("the policy") by State Auto.[1]

Vehicles covered under the policy are designated by the symbol 29. (Doc. No. 33-5 Garage Policy Declaration, Schedule of Coverage and Covered Autos). Under Section I of the Covered Autos Section of the Garage Coverage Form, Symbol 29 refers to only "NON-OWNED 'AUTOS' USED IN YOUR GARAGE BUSINESS."

Section VI - Definitions, E defines garage operations as:

> "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other access that adjoin these locations. "Garage operations" includes the ownership, maintenance, or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". **"Garage operations" also include all operations necessary or incidental to a garage business**.

Doc. No. 33-5, p. 32. (Emphasis Added).

The Pennsylvania Garage Liability Coverage Endorsement section of the policy defines an "insured" as:

> (1) You for any covered "auto";
> (2) Anyone else while using **with your permission** a covered "auto" you own, hire or borrow. . .

Doc. No. 33-5, p. 13, Commercial Auto Endorsement, CA 01 57 10 97. (Emphasis Added).[2]

---

[1] While Steiner disputes the characterization of the policy as a "garage keeper's" policy, she offers no contrary factual support for her position. The Court notes that the policy declaration itself terms the policy as a "Garage Policy" and under the "Coverage" section the policy is listed as a "garagekeepers" policy. (doc. no. 33-5).

[2] Steiner disputes the language of the policy, instead of disputing the inferences or characterizations thereof.

## IV. The Law.

There is no dispute that Pennsylvania law governs the interpretation of the policy. The Supreme Court of Pennsylvania summarized the law of insurance contract interpretation in *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166 (2005), where it stated as follows:

> [W]e begin our analysis by setting forth the well-established rules of insurance contract interpretation. "The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986) (*quoting Standard Venetian Blind Co.* (citations omitted)). When the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id*. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *See id.* "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison Construction Co.*, 735 A.2d at 106 (*quoting Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) (*quoting Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

879 A.2d at 171. *See also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363-65 (3d Cir. 2004) (summarizing Pennsylvania law on the interpretation of insurance contracts).

The rule that any ambiguity must be resolved in favor of coverage for the insured

recognizes that insurance policies are contracts of adhesion between parties of usually unequal bargaining power, especially regarding the language of such contracts that has been drafted by the insurance industry, *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1075 (3d Cir. 1990), and that "transactions between insurers and insureds are fundamentally different from those between parties to contracts as envisioned by the common law." *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309-10 (3d Cir. 1994).

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). In *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d at 1309, the United States Court of Appeals for the Third Circuit instructed courts applying Pennsylvania law to "examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured." The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Auth. v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981). A determination of whether a contract is ambiguous also is a question of law for the court. *Hutchison*, *supra*.

### V. **Application**.

Viewed in light of the foregoing principles of insurance contract interpretation, and when viewing the factual record in the light most favorable to the non-moving party, the Court finds that the policy in question excludes coverage as a matter of law.

Steiner contends that are issues of facts regarding whether Alexander: (1) had permission to operate the van at the time of the accident; and, (2) was operating the van "incidental" to the

business operation of McCutcheon.

**(1) Implied Permission**

Steiner argues that Alexander had implied permission to operate the van at the time of the accident based upon testimony that Alexander had operated other vehicles owned by McCutcheon in the course and scope of his employment with McCutcheon. However, it is important to note that both Alexander and McCutcheon unequivocally stated that Alexander was not supposed to operate the van as a personal vehicle. Accordingly, there is certainly no issue of fact surrounding whether Alexander had express consent; the only issue remaining is whether Alexander had implied consent or some other course of conduct to show that the parties mutually acquiesced to operate the vehicle in question. The necessary permission may be in the form of express or implied affirmative consent, or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced. *Beatty v. Hoff*, 114 A.2d 173, 177 (1955).

There is no evidence to show that there was a mutuality of agreement that Alexander was permitted to use the van at the time of the accident in the manner he was using it. In fact, Alexander testified as follows:

> It was a mutual understanding thing without words. You know what I mean? It was just known. Do you know what I mean? You don't take a vehicle that is not tagged, insured, registered and take it out for a joy ride, especially when you don't have a license. This is something you don't do. It's something I did, but it's not something you're supposed to do; not a responsible adult is supposed to do.

However, in *Adamski v. Miller*, 681 A.2d 171 (1996), the Supreme Court of Pennsylvania stated that implied consent can be established where it is shown that the insured saw a third party driving his or her car and did not object to such use. Steiner has presented facts to show that Alexander had driven the van to McCutcheon's home after he put a new engine in it prior to the

accident and McCutcheon told Alexander to check the van to see if it needed anything else while he was away.

The Court finds that when judging the facts in the light most favorable to Steiner, as the non-moving party, she has set forth facts from which a jury could surmise that McCutcheon acquiesced to Alexander driving the van and that he had implied permission to drive the van.

**(2) Use of the Van Was Not "Incidental" to the Garage Business**

Even though defendant has created a material issue of fact regarding whether Alexander had McCutcheon's implied consent to operate the van, the Court still needs to determine whether Alexander was operating the van "incidental" to the garage business of McCutcheon, and if not, there is no coverage as a matter of law. The undisputed facts of record evidence that Alexander was operating the vehicle at 10:10 p.m, more than five hours after the end of his shift, and was driving to an ATM to get cash to purchase beer. In fact, Alexander's own testimony establishes at the time of the accident, he was using the vehicle for his own personal use. Although Alexander did intimate that he wanted to take out the vehicle to test drive it, the facts establish that he did so hours after the close of business, after drinking at a local bar, visiting friends and going to get money at an ATM several miles away from the Bob's Towing business.

These facts, even when viewed in the light most favorable to Steiner, do nothing to establish that the vehicle was being used in a way that was "incidental"[3] or even casually related to the garage business. Rather, these facts demonstrate that Alexander was acting beyond and outside of the scope of his employment. See *Fitzgerald v. McCutcheon,* 410 A.2d 1270, 1272 (Pa. Super. 1979), *quoting* Restatement (Second) of Agency § 228)(conduct of off-duty police

---

[3]Webster's New World Dictionary, Second Concise Edition defines incidental as "1. happening or likely to happen in connection with something more important; casual; 2. secondary or minor."

officer who had been off-duty all day and went drinking that night was not attributable to City of Philadelphia under respondeat superior because "conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master") . See also, *Shuman Estate v. Weber*, 419 A.2d 169 (Pa. Super. 1980)(holding that employee of repair shop was acting outside of the scope of his employment when, hours after the end of his shift, and after drinking alcohol, he ran an automobile which he had repaired into the side of a building, and therefore employer was not liable to owner of building).

**VI. Conclusion.**

For all of the foregoing reasons, viewing the facts in the light most favorable to Steiner, the Court finds that under the clear and unambiguous language of the insurance policy at issue, there is no coverage as a matter of law because even if Alexander had implied permission to "check" the van, his use of the van at the time of the accident was not "incidental" to the "garage operations" of the business of Bob's Towing. No reasonable juror could find that Alexander's use of the van for a joy ride long after the close of business was either "necessary or incidental to a garage business." For these reasons, the Court will rule in favor of plaintiff and against defendant Joyce Steiner in this declaratory judgment action.[4]

The motion for summary judgment by plaintiff, State Auto (doc. no. 30) will be GRANTED.

An appropriate order follows.

s/Arthur J. Schwab
Arthur J. Schwab

---

[4] Defendant McCutcheon agrees that no coverage is available under the terms of the contract, and thus concurs that summary judgment should be entered in favor of plaintiff. Alexander, who is *pro se*, did not file a response to the motion for summary judgment.

United States District Judge

cc: All Registered ECF Counsel and Parties

William Alexander
410 Mars Valencia Road
Mars, PA 16046